IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT PATRICK HORTON,                           1:12-cv-00612-MA

                Plaintiff,                    OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

ALAN STUART GRAF
316 Second Road
Summertown, Tennessee 38483

     Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

JEFFREY R. MCCLAIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Robert Patrick Horton, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act.  See 42 U.S.C. §§ 401-434, 1381-1383f.  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, I REVERSE the final decision of the Commissioner and REMAND for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on April 10, 2009, alleging disability due to "[p]anhypopituitarism, [s]econdary to [c]raniopharyngioma." Tr. 186.  His application was denied initially and upon reconsideration.  A hearing was held before an Administrative Law Judge (ALJ) on August 18, 2010, at which plaintiff was represented by counsel and testified.  In addition, plaintiff's mother, Dorothy Pauline Horton, testified on plaintiff's behalf.  Vocational Expert (VE) Francene Geers was present throughout the hearing and testified.

On September 24, 2010, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  After the

Appeals Council declined review of the ALJ's decision, plaintiff timely filed a complaint in this court.

## FACTUAL BACKGROUND

Born on April 15, 1964, plaintiff was 31 years old on the alleged onset date of disability and 46 years old on the date of the hearing. Plaintiff has a high school diploma, and no past relevant work. Tr. 37-38.

Plaintiff alleged his disabilities became disabling on December 30, 1995. In addition to the hearing testimony, plaintiff submitted an Adult Function Report. Douglas Crane, M.D., one of plaintiff's treating physicians, wrote an opinion as part of plaintiff's discharge report from a 2009 hospitalization. James B. Powell, Psy.D., evaluated plaintiff and submitted a Psychological Evaluation. Raymond P. Nolan, M.D., examined plaintiff and submitted an opinion regarding plaintiff's physical impairments.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national

economy that the claimant can perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date, December 30, 1995.  See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 13.

At Step Two, the ALJ determined that plaintiff's anxiety disorder, affective disorder, cognitive disorder, hypothyroidism, and hypopituitarism were severe impairments.  See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 14.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 14.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform less than a full range of sedentary work. The ALJ limited plaintiff to lifting 10 pounds frequently and 20 pounds occasionally, walking or standing for two hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. The ALJ found that plaintiff could only occasionally push and pull with the upper left extremity, but can use left and right foot controls frequently.  The ALJ found that plaintiff could balance frequently, climb ramps and stairs only occasionally, stoop or crouch occasionally, and could not climb ladders, ropes or

4 - OPINION AND ORDER

scaffolds.  The ALJ found that plaintiff could not kneel or crawl. The ALJ limited plaintiff to occasionally reaching with his non-dominant left hand, except that he could not reach overhead with his left hand.  The ALJ found that plaintiff should have no greater than occasional exposure to heights or hazardous machinery, but could perform simple, routine, repetitive tasks, and could have occasional contact with the public.  Tr. 15.

At Step Four, the ALJ determined that plaintiff had no past relevant work.  See 20 C.F.R. §§ 404.1565, 416.965; Tr. 20.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including Surveillance System Monitor and Addresser.  See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 663-64.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff argues that the ALJ erred in three ways.  First, plaintiff argues that the ALJ improperly discounted his testimony. Second, plaintiff maintains that the ALJ improperly weighed the medical testimony by rejecting the opinions of Drs. Crane, Powell, and Nolan.  Finally, plaintiff asserts that the jobs supported by the RFC are so few that they do not amount to jobs that exist in significant numbers in the national economy.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   Rejection of Plaintiff's Testimony

The ALJ discredited plaintiff's testimony because plaintiff did not seek medical treatment for the first fourteen years of his claimed disability, recent treatment notes show few complaints of disabling restrictions, medication substantially controlled plaintiff's hypopituitarism, and plaintiff's alleged concentration

impairments were not consistent with objective findings or plaintiff's self-described daily activities. Tr. 16-17.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, plaintiff stated that the biggest obstacle to maintaining work is his immaturity, which he says causes him difficulty maintaining concentration and completing tasks. Tr. 49-50.  Plaintiff also testified that he has short term memory problems. Tr. 69. Additionally, plaintiff testified that knee and back pain caused by rapid growth after having a brain tumor removed and subsequent hormone treatment as a teenager prevents him from walking for extended periods. Tr. 50-52.  Plaintiff alleged that his hypopituitarism and associated medications cause fatigue. Tr. 54, 58. As to his mental limitations, plaintiff alleged that his depression, anxiety, and immaturity cause him to be dependent on his mother for support because he does not eat appropriately or take care of other daily chores when left alone. Tr. 59-60.

With regard to his activities of daily living, plaintiff indicated that he wakes up, cleans his room, vacuums and dusts the house three times per week, and performs other chores as assigned by his mother. Tr. 66-67. Plaintiff testified that he arranges the payment of family bills on the internet. Tr. 67. When his father was alive, plaintiff routinely woke at 6:00 am to monitor his father's stock portfolio, created daily reports on the performance of the portfolio, and researched stocks at his father's direction. Tr. 43-45, 73-76, 79-84. Once he is finished with chores, plaintiff plays video games for four to five hours per day. Tr. 64. Plaintiff reports that he is also a very good reader, and

enjoys reading mystery novels, military, and classic books. Tr. 70. Titles plaintiff has read include the "Harry Potter" series, "The Chronicles of Narnia," and "Treasure Island." Id. Plaintiff reported that he has no problem following the plotlines of the books he reads. Id.

The ALJ first rejected plaintiff's subjective testimony because his alleged level of disability was inconsistent with the lack of medical treatment in the record from 1995 - the alleged onset date - until 2009 when plaintiff presented to the hospital with suicidal ideation and, near the same time, applied for disability benefits. Tr. 16. A claimant's unexplained failure to seek medical treatment for a disabling condition is an appropriate basis upon which an ALJ may discredit a claimant's subjective testimony. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ's finding is supported by substantial evidence in the record. There are no medical records regarding any treatment between 1984 and 2009. This 25-year gap in the medical record includes the first fourteen years of plaintiff's alleged disability. The ALJ permissibly discredited plaintiff's subjective testimony on this basis.

The ALJ also discredited plaintiff's subjective testimony because, with the exception of a hospital presentation in 2009, the claimant's "recent treatment notes show few complaints or findings indicative of disabling restrictions," and plaintiff's

hypopituitarism was controlled by medication.  Tr. 16.  The ALJ noted that the 2009 hospitalization was caused by plaintiff's cessation of medication, and that he showed immediate improvement upon the resumption of medication at the hospital and continued improvement after his release.  Id.

The ALJ's finding in this respect is supported by substantial evidence.  Plaintiff presented to the hospital on April 8, 2009 with "suicidal ideation and major depression."  Tr. 262.  Plaintiff was found to be "profoundly hypothyroid and in adrenal crisis secondary to hypopituitarism."  Id.  After being put back on hormone replacement medication, plaintiff "felt immediately improved."  Id.  At a follow-up appointment approximately one month after his hospitalization, plaintiff reported "feeling great," and, other than a plugged left ear, had "no problems."  Tr. 275.  In December of 2009, Nurse Practitioner Nancy Erb noted that plaintiff had a "[c]omplex health history, currently stable, feeling well."  Tr. 342.  This trend continued in July of 2010, when plaintiff was reported "[d]oing well with the meds for thyroid and pituitary."  Tr. 459.  The ALJ permissibly discredited plaintiff's subjective symptom testimony on this basis.

The ALJ also discredited plaintiff's testimony because plaintiff's explanation for why he stopped taking his medication was contradicted by the record.  Tr. 18.  At the hearing, plaintiff reported that he stopped taking his medication because he did not

have insurance.  Tr. 60.  Plaintiff testified that his mother attempted to convince him to take his medication, but that he refused.  Id.  Plaintiff reported that he would tell her that he was taking them, but that he did not have them.  Tr. 60-61. Similarly, during his 2009 hospitalization and 2010 physical examination, plaintiff reported that he had stopped taking his medication due to lack of insurance.  Tr. 264, 438.

At the hearing, however, plaintiff's mother testified that she thought plaintiff went off his medication because he did not like the way they made him feel.  Tr. 90.  Similarly, during the 2009 hospitalization, plaintiff's mother reported that plaintiff "simply got tired of taking [the medication] and has stopped and, despite her best efforts, he has been refusing for this long."  Tr. 266. Plaintiff reportedly refused to take his medications because they made him feel nauseated.  Id.  The ALJ could reasonably discount plaintiff's testimony because his statement that he went off his medication due to lack of insurance was contradicted by the record.

Finally, with respect to plaintiff's mental limitations, the ALJ found plaintiff's alleged symptoms not credible because plaintiff did not seek any mental health treatment.  This finding is supported by substantial evidence.  With the exception of some records of appointments with social workers in the early 1980s, there is no evidence of mental health treatment in the record.  Tr. 356, 380-83.  Indeed, other than the psychological evaluation, the

only reference in the medical record to psychological problems were the severe depression associated with his cessation of medication during his 2009 hospitalization, and depression, anxiety, and insomnia that appear connected to his father's death in March of 2010. Tr. 451. Otherwise, plaintiff denied or did not demonstrate any psychological symptoms. See Tr. 275, 342, 451. The ALJ's finding in this respect is supported by substantial evidence and is a proper basis on which to reject plaintiff's testimony as to his mental health limitations. See Fair, 885 F.2d at 603. I conclude that the ALJ's reasons, when taken together, constitute clear and convincing reasons for rejecting plaintiff's testimony.

## II. **Weighing the Medical Testimony**

Plaintiff asserts that the ALJ erred in discrediting, to varying degrees, the opinions of Drs. Crane, Nolan, and Powell. Generally, greater weight is given to the opinion of a physician who treats the claimant than to that of a physician who merely examines the claimant or reviews the claimant's records. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Id. 830-31. Where a physician's opinion is contradicted by that of another physician, the ALJ may reject the first physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

### A.    Dr. Crane

In his decision, the ALJ gave little weight to Dr. Crane's opinion because it was inconsistent with his subsequent records that contain few complaints or findings that show any significant functional limitations. Tr. 19. In his Discharge Summary after plaintiff's 2009 hospitalization, Dr. Crane wrote:

> It must be understood that these are disabling deficiencies and that even with replacement he should be considered fully Social Security dependent. I would support Social Security hearing, even if I needed to be present to get him SSI, as there is no comprehendible way that he could seek gainful employment. He, at best, is going to be weak and debilitated from his pituitary absence, and at worse [sic] ceasing his medications is fatal.

Tr. 263. Dr. Crane's complete, permanent disability opinion was contradicted by both Drs. Powell and Nolan, who opined that

plaintiff would likely be able to maintain employment at some point and in some fashion. Tr. 316, 439-40. Thus, the ALJ was required to cite specific and legitimate reasons, supported by substantial record evidence, to reject Dr. Crane's opinion. Lester, 81 F.3d at 830-31.

The ALJ rejected Dr. Crane's opinion because it was inconsistent with his own subsequent records, and it was not clear Dr. Crane was familiar with the statutory and regulatory definitions of "disability." Tr. 19. Indeed, the only other note from Dr. Crane in the record reported that one month after the hospitalization, plaintiff was "feeling great," and had "no problems" other than a plugged ear. Tr. 275. The ALJ could reasonably find that this note is in stark contrast to the complete disability opinion Dr. Crane wrote one month earlier, and discredit his opinion on that basis. Additionally, the ALJ was correct that he was not required to give any weight to Dr. Crane's opinion that plaintiff was entirely disabled because the ultimate disability determination is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). I conclude the ALJ cited specific and legitimate reasons, supported by substantial record evidence, to reject Dr. Crane's brief opinion.

///

///

///

**B.   Dr. Nolan**

The ALJ credited the opinion of Dr. Nolan, and incorporated it into the RFC.  When describing plaintiff's functional limitations, Dr. Crane concluded:

> In reference to function capabilities, based on subjective complaints primarily, I would have him restrict activities involving squatting and kneeling and minimize bending, twisting and turning and limit lifting and carrying to 10 pounds on a frequent basis and up to 20 pounds occasionally.  He should be able to sit for at least six hours in an eight-hour day with appropriate breaks as needed for comfort.  He should be able to stand and or walk about two hours, and perhaps more, in an eight-hour day with opportunity for breaks as needed for comfort.   He will have restrictions in reference to pushing and pulling, involving his left upper extremity in particular restrictions involving attempting to use his left arm extended overhead.  Given his inability to self regulate hormone levels, with resultant complaint of decreased exercise endurance he would be best served by nonstrenuous activities and a more sedentary type of job. His communication skills are quite adequate.

Tr. 440.  Elsewhere in his opinion, Dr. Nolan noted that plaintiff had a "residual visual field deficit," and checked that such impairment caused him to be unable to "avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles," but did not include it in the functional limitations portion of his discussion.[1]  Tr. 439, 444.

The ALJ is tasked with translating a doctor's opinion into functional limitations in the RFC.  See Stubbs-Danielson, 539 F.3d

---

[1] I note that the ALJ's limitation of plaintiff to sedentary work would minimize some of these hazards.

at 1174. Here, in translating Dr. Nolan's opinion into functional limitations, the ALJ relied heavily on the portion of the opinion Dr. Nolan described as setting out plaintiff's "function capabilities." The ALJ could reasonably rely on Dr. Nolan's description of plaintiff's functional limitations, which did not expressly include plaintiff's peripheral vision deficit. The ALJ reasonably incorporated Dr. Nolan's opinion into the RFC.

### C.   Dr. Powell

The ALJ also partially discredited Dr. Powell's opinion. Dr. Powell concluded that while plaintiff's employment prognosis was "good," it may take a period of 12 months or more to fully recover from the hospitalization incident. Tr. 316. Because Dr. Powell's opinion was contradicted by reviewing psychologist Kordell N. Kennemer, Psy.D, and Dr. Nolan, at least as to plaintiff's immediate capacity to work, the ALJ was required to cite specific and legitimate reasons, supported by substantial record evidence, to reject Dr. Powell's opinion. Tr. 277-90, 438-46; Lester, 81 F.3d at 830-31.

The ALJ does not appear to have rejected Dr. Powell's opinion in its entirety, but rather only rejected some of Dr. Powell's findings. The ALJ rejected Dr. Powell's findings that plaintiff has moderate limitations in concentration, persistence, and pace, and a marked limitation in his ability to independently manage activities of daily living, because they were inconsistent with Dr.

Powell's own findings and the record as a whole. Tr. 19. In his opinion, Dr. Powell also found that plaintiff had a "marked level of impairment in the area of socialization," whereas the ALJ only found moderate limitations in social functioning. Tr. 14, 315. Notably, however, Dr. Powell concluded that the "prognosis for [plaintiff] being able to maintain employment in the future is considered to be good," but that rehabilitation after his hospitalization "may easily take a period of at least 12 months." Tr. 316.

With respect to the rejection of the concentration limitations, the ALJ noted that plaintiff engaged in activities that could reasonably be interpreted as requiring concentration. For example, the ALJ noted that plaintiff testified he spent four-to-five hours, or more, per day playing video games that require the player to perform a series of goal-directed tasks. Tr. 64-66. Additionally, as the ALJ noted, plaintiff testified that he is a "very good reader," reads "all sorts of books," and has no trouble following along with plotlines. Tr. 70. Nonetheless, in his opinion, the ALJ gave "the benefit of the doubt to the claimant" and found that he may have moderate limitations in concentration, persistence, and pace. Tr. 19. It is not clear, however, if this was accounted for in the RFC or vocational hypothetical. The limitation to "simple, routine, repetitive work" does not, in every instance, accommodate moderate limitations in concentration,

persistence, and pace.  See Brink v. Comm'r Soc. Sec. Admin., 343
Fed. Appx. 211, 2009 WL 2512514 (9th Cir. 2009).  In this case, it
is not clear if the ALJ incorporated the moderate concentration,
persistence, and pace limitations he accepted into the RFC, or what
impact, if any, it would have on the disability determination.

The ALJ also did not accept Dr. Powell's finding of marked
limitations in social functioning.  The ALJ, however, did not
explain why he found only moderate limitations.

Finally, the ALJ rejected Dr. Powell's finding of marked
limitations with respect to plaintiff's ability to independently
manage activities of daily living because plaintiff engages in
numerous daily activities including household chores, driving,
paying bills, researching stocks, playing video games, and reading.
Tr. 19.   Dr. Powell acknowledged, however, that within the
structure provided by his parents, plaintiff was "functioning
relatively well."   Dr. Powell's point was that plaintiff had
difficulty managing his activities of daily living *outside* the
structure and support provided by his family.  Tr. 315.  The ALJ
did not account for this in his explanation of his rejection of Dr.
Powell's finding.   I conclude the ALJ did not cite sufficient
reasons for partially rejecting Dr. Powell's opinion.

## III. Existence of Jobs in Significant Numbers

To find that a claimant is not disabled at Step Five, the
Commissioner must demonstrate that the claimant is able to engage

18 - OPINION AND ORDER

in jobs that exist in significant numbers in the national economy. See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a). The jobs cited by the ALJ must be available in "significant numbers" in *either* the regional or national economy. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). The Ninth Circuit Court of Appeals has not established "a bright-line rule for what constitutes a 'significant number' of jobs." Id.

At the hearing, the VE identified two jobs in response to the ALJ's ultimate hypothetical: Surveillance System Monitor, which the VE testified consisted of 47,000 jobs nationally and 210 in Oregon; and Addresser, which the VE testified consisted of 150,000 jobs nationally and 335 in Oregon. Tr. 21, 104, 106. The parties agree that plaintiff cannot perform the job of Addresser. Plaintiff accordingly argues that the 47,000 jobs nationally and 210 jobs in Oregon that remain do not exist in sufficiently "significant numbers" to carry the Commissioner's burden.

Because the Commissioner now concedes that the job of Addresser is not available to plaintiff, I conclude that the ALJ should have the opportunity in the first instance to determine whether the number of Surveillance System Monitor jobs are sufficient, or if there are additional jobs plaintiff can perform within an adequately supported RFC. See Hancock v. Barnhart, 153 Fed. Appx. 430, 2005 WL 2885475 (9th Cir. 2005) (remanding to the Commissioner under similar circumstances).

19 - OPINION AND ORDER

IV.  **Remand**

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Id. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

In this case, there are outstanding issues to be resolved before a determination of disability can be made. As discussed above, the ALJ erred in addressing Dr. Powell's opinion. Thus, I remand for reconsideration of Dr. Powell's opinion. The ALJ should

expressly accept or reject the concentration, persistence, and pace limitations, and accordingly determine what effect they have on the disability determination. Additionally, the ALJ should explain the partial rejection of Dr. Powell's social functioning limitations, and consider Dr. Powell's finding of marked limitations in *independent* management of daily activities, and explain what effect that has on the disability determination.

Additionally, I order the Commissioner to have a new psychological evaluation performed. It is unclear to what extent Dr. Powell's opinion was addressing temporary limitations caused by plaintiff's cessation of medication and hospitalization. Dr. Powell concluded that plaintiff's future employment prognosis was good, but that it could take more than 12 months for sufficient recovery to take place. Tr. 316. A new psychological evaluation will allow for a more accurate assessment of plaintiff's functional capacity while properly medicated. Upon the completion of the new psychological evaluation, the ALJ must cite legally sufficient reasons for determining the appropriate weight to be given to the new evaluation and Dr. Powell's.

Finally, the ALJ should revisit the determination of whether a significant number of jobs exist in the national economy that plaintiff can perform. In doing so, the ALJ may take additional VE testimony to accommodate any changes to the RFC or determine if there are other jobs plaintiff can perform.

In short, because outstanding issues remain which must be resolved, and because it is not clear from the record that Plaintiff is entitled to disability benefits, I reverse the ALJ's decision and remand for further administrative proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _31_ day of March, 2013.

Malcolm F Marsh
Malcolm F. Marsh
United States District Judge

22 - OPINION AND ORDER